```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
YOSEF LOWENBIEN,                                            :
on behalf of herself and all others similarly               :
situated,                                                   :
                                                            :              MEMORANDUM
                                                            :              DECISION AND ORDER
                                       Plaintiff,           :
                                                            :              19-cv-492 (BMC)
              - against -                                   :
                                                            :
TRANSWORLD SYSTEMS, INC.,                                   :
                                                            :
                                       Defendant.           :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

Plaintiff claims that defendant's communications with him violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. This case is before the Court on defendant's motion to dismiss for failure to state a claim. For the reasons below, defendant's motion to dismiss is granted.

## SUMMARY OF COMPLAINT

Plaintiff entered into a contract with E-ZPass, an electronic payment service in which customers use a transponder in their cars to pay tolls. Customers associate a credit card with their E-ZPass accounts that would replenish the balance on a monthly basis. E-ZPass allows customers to continue to use E-ZPass facilities with a negative balance for up to 60 days and make back payments if a transponder was not working properly.

Plaintiff incurred a fee because he did not pay E-ZPass. Defendant's representative then called plaintiff to attempt to collect the debt, but plaintiff attempted to dispute the debt. The

representative stated that plaintiff must put his dispute in writing and there must be a reason for the dispute. Defendant also sent plaintiff a debt collection letter that misstated the actual amount of the debt, did not itemize the charges, and did not explain the amount of the debt. Plaintiff claims that defendant's practices violated the FDCPA.

## DISCUSSION

The usual standards for deciding a Rule 12(b)(6) motion – as developed in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and their progeny – "shed[] little light in FDCPA cases, including this one ... ." Meintzinger v. Sortis Holdings, Inc., 18-cv-2042, 2019 WL 1471338, at *2 (E.D.N.Y. April 3, 2019). These usual standards focus on whether a plaintiff has filed a well-pleaded complaint, i.e. "the plaintiff must provide the defendant with sufficient facts to suggest that the specific violation of law actually happened, and how, such that the defendant has adequate notice of the claims against him." Alharbi v. Miller, 368 F. Supp. 3d 527, 560 (E.D.N.Y. 2019). But the primary issue in this case relates to a separate requirement of Rule 12(b)(6), that the complaint "state[s] a legally cognizable claim for relief." Id. "A complaint could include a wealth of specific and particular facts, which would otherwise meet the standard for plausibility, but in some instances, no amount or combination of those facts could ever give rise to a violation of law." Id.

This case illustrates the latter circumstance, where regardless of the particularity of the allegations in the complaint, plaintiff has failed to state a claim because he has failed to allege that defendant attempted to collect a debt under the FDCPA. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services *which are the subject of the transaction are primarily for personal, family, or household purposes*, whether or not such obligation has been reduced to

judgment." 15 U.S.C. § 1692(a)(5) (emphasis added). The E-ZPass "debt" at issue here was neither the subject of a transaction nor was it primarily for personal, family, or household purposes.

First, since "the 'transaction' from which the obligation to pay money arises must, by definition, be one that is consensual in nature," the Second Circuit has "h[e]ld that money owed as a result of theft is not an obligation or alleged obligation of a consumer to pay money arising out of a transaction and, therefore, does not constitute a debt for purposes of the FDCPA." Beauvoir v. Israel, 794 F.3d 244, 247-48 (2d Cir. 2015) (internal quotation marks omitted). In Beauvoir, the alleged "debt" was money owed is a result of the consumption of unmetered gas, because the debtor/plaintiff had unlawfully tampered with the utility's gas meter." Here, the alleged "debt" is money owed as a result of plaintiff not paying E-ZPass, which effectively allowed plaintiff to use toll roads for free. Just like in Beauvoir, the E-ZPass "debt" was more akin to theft than to a consensual agreement, and was not the result of a "transaction" under the FDCPA. See Beggs v. Rossi, 145 F.3d 511, 512 (2d Cir. 1998) ("The relationship between taxpayer and taxing authority does not encompass that type of *pro tanto* exchange which the statutory definition envisages.") (internal quotation mark omitted); Yazo v. Law Enf't Sys., Inc., 08-cv-03512, 2008 WL 4852965, at *3 (C.D. Cal. Nov. 7, 2008) ("to the extent a driver does not have intent or does not have means to pay for use of the toll road, yet uses the toll road anyway, that use constitutes theft, and is not a consensual transaction that gives rise to 'debt' under the FDCPA.").

Second, even if plaintiff owed money as a result of a "transaction" under the FDCPA, it was not primarily for personal, family, or household purposes. To the contrary, what plaintiff "receives in exchange for the payment of highway tolls is not the private benefit of a personal,

3

family, or household service or good but the very public benefit of highway maintenance and repair." St. Pierre v. Retrieval-Masters Creditors Bureau, Inc., 898 F.3d 351, 363 (3d Cir. 2018) (internal quotation marks omitted). Although certain individual E-ZPass customers may be more interested in gaining access to tolled highways than in funding infrastructure, the relevant inquiry is not "whether, subjectively, an individual chooses to enter into the transaction primarily for his own personal purposes" but rather "whether, objectively, the subject of the transaction … is primarily for personal purposes." Id. at 363-64.

It would be unworkable to allow the personal goals of each individual FDCPA plaintiff to control whether a given transaction is "primarily for personal, family or household purposes," since there would then be satellite litigation about the actual intentions of each plaintiff when entering into a potential transaction. Avoiding such satellite litigation is one of the advantages of the use of an objective rather than a subjective standard under the FDCPA for assessing debt collection letters, which are assessed from the perspective of the "least sophisticated consumer." See Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993).

Plaintiff's arguments to the contrary are not persuasive. Plaintiff contends that E-ZPass has effectively agreed to extend credit to its customers because it allows them to continue to use its services despite not paying for them. However, the mere fact that an E-ZPass transponder continues to operate even when consumers do not pay E-ZPass is not a sign that E-ZPass has consented to extend credit to its customers. To hold otherwise would be to punish E-ZPass for being lenient with customers by subjecting it to the demanding and costly regulatory regime that the FDCPA has become. See Ocampo v. Client Services, Inc., 18-cv-4326, 2019 WL 2881422 (E.D.N.Y. July 3, 2019).

Plaintiff also contends that his obligations to E-ZPass could not constitute theft because they were contractual in nature, and therefore constitute "debt" under the FDCPA. However, the obligation at issue here is not merely the obligation arising from plaintiff's underlying contract with E-ZPass but rather plaintiff's failure to pay for his use of the roads. Since plaintiff had an obligation to pay the tolls when he used the roads regardless of whether he used E-ZPass to pay those tolls, the obligation was not contractual in nature, and plaintiff's failure to pay the toll is thus more akin to theft than to breach of contract. See Yazo, 2008 WL 4852965, at *3.

Relatedly, plaintiff observes that he was not compelled to use E-ZPass but rather could have paid in cash when paying the tolls that gave rise to this action. However, it is irrelevant whether, to access a given highway, plaintiff could have paid in cash or with E-ZPass. Regardless of whether plaintiff had alternatives to E-ZPass, he chose to use E-ZPass to pay the tolls. His failure to pay is not a "transaction" as neither E-ZPass nor the relevant transportation authority would consent to plaintiff's use of a highway without paying the toll. See Beauvoir, 794 F.3d at 247 ("[Under the FDCPA] the 'transaction' from which the obligation to pay money arises must, by definition, be one that is consensual in nature.").

## CONCLUSION

Defendant's [11] motion to dismiss is granted. The Clerk is directed to enter judgment in favor of defendant, dismissing the complaint.[1]

**SO ORDERED.**

                                                                                                         _____
                                                                                                                         U.S.D.J.

Dated: Brooklyn, New York
           July 15, 2019

---

[1] The procedural posture of this case raises the specter of one-way intervention, i.e. the risk that "potential class members [are] waiting on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervening to take advantage of the judgment." Brecher v. Republic of Argentina, 806 F.3d 22, 26 (2d Cir. 2015). However, the decision to decide the merits of a case "before acting on class certification [is] well within the discretion of the district court, particularly [if plaintiff] never moved to certify the purported class." Schweizer v. Trans Union Corp., 136 F.3d 233, 239 (2d Cir. 1998). Here, defendant – the party who would be most harmed by potential class members' one-way intervention – filed a motion to dismiss and plaintiff has not moved to certify the purported class. The Court therefore finds that it is appropriate to resolve the motion to dismiss before plaintiff moves to certify the purported class. See Schwarzschild v. Tse, 69 F.3d 293, 295 (9th Cir. 1995).

6